IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CAROLYN O'NEILL,

      **Plaintiff,**

v.                                                                                    Case No. 3:25-CV-2231-NJR

SOUTHERN ILLINOIS HOSPITAL
SERVICES d/b/a SIH ST. JOSEPH
MEMORIAL HOSPITAL, DR. ALAN J.
WILSON, AMBER DURHAM, JOHN
DOES 1-5, JANE DOES 1-5,

      **Defendants.**

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court for review of the First Amended Complaint filed by *pro se* Plaintiff Carolyn O'Neill. (Doc. 8). The Court previously granted O'Neill's motion to proceed *in forma pauperis* but dismissed her original Complaint because she failed to properly allege subject matter jurisdiction. (Doc. 6). The Court further advised O'Neill that while her allegations did not state a claim under 42 U.S.C. § 1983, she may have claims sounding in Illinois tort law. (*Id.*).

On February 25, 2026, O'Neill filed a First Amended Complaint to address the deficiencies identified by the Court. (Doc. 8). O'Neill now alleges that she is a citizen of Maryland, Southern Illinois Hospital Services is a citizen of Illinois, and that, upon information and belief, Dr. Alan J. Wilson, Amber Durham, and the John and Jane Doe Defendants are citizens of Illinois. (Doc. 8 at pp. 7-8). O'Neill also claims compensatory

damages of not less than $250,000 and requests punitive damages to be determined by a jury. (*Id.* at p. 14).

Regarding her factual allegations, O'Neill claims that she presented to the Emergency Department ("ED") at SIH St. Joseph Memorial Hospital in Murphysboro, Illinois, on December 29, 2023, solely to obtain an insurance-required referral for outpatient counseling. (Doc. 8 at p. 9). She did not request inpatient treatment or any emergency psychiatric intervention. (*Id.*). O'Neill claims she was calm, cooperative, did not pose a danger to herself or others, and did not express any suicidal ideations or desire to self-harm. (*Id.*). When she requested to leave the facility, however, she was detained against her will by hospital staff. (*Id.*). Law enforcement was summoned, and a physician mentioned that the officers "had guns," which O'Neill understood as coercive pressure to comply with their orders. (*Id.*). O'Neill was placed on a gurney and restrained at her wrists and ankles. (*Id.*). She did not resist and complied with all instructions. (*Id.*). While she was restrained, staff members cut off her bra without medical necessity or explanation, and she was not provided with a replacement. (*Id.*).

O'Neill states that, at the time of the incident, she had documented medical conditions including PTSD and a history of Stevens-Johnson Syndrome,[1] which were reflected in her medical records. (*Id.*). She repeatedly warned staff of serious medication risks and asked that any medication be verified before administration. (*Id.*). She also

---

[1] Stevens-Johnson syndrome is a rare, serious disorder of the skin and mucous membranes. It is usually a reaction to medication that starts with flu-like symptoms, followed by a painful rash that spreads and blisters. The top layer of affected skin dies, sheds, and begins to heal after several days. "Stevens-Johnson syndrome," Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/stevens-johnson-syndrome/symptoms-causes/syc-20355936 (last visited Mar. 25, 2026).

explicitly refused consent to any injectable medication. (*Id.* at pp. 9-10).

Despite these warnings and lack of consent, and while O'Neill was restrained, staff injected her with Geodon. (*Id.* at p. 10). Staff also refused to identify the drug they administered or provide a medical necessity or emergency justification for the injection. (*Id.*). The restraints on O'Neill's wrists and ankles were also improperly positioned, causing a loss of sensation and circulation in her arm. (*Id.*). Staff then removed telemetry monitoring and failed to perform circulation, motor, or sensation checks on her extremities. (*Id.*). While O'Neill was restrained for approximately two hours, she was denied access to her phone and contact with her family, denied water, denied bathroom access or a bedpan, and was exposed to cold conditions without a blanket. (*Id.*). She was told the lack of bathroom access or a bedpan was due to her "acting out." (*Id.*).

O'Neill alleges she was never informed, verbally or in writing, that she was being detained pursuant to any provision of the Illinois Mental Health and Developmental Disabilities Code, nor was she presented with involuntary admission documentation, emergency hold paperwork, or any written notice identifying the statutory basis for her detention or restraint. (*Id.*).

Within 48 hours of being discharged, O'Neill developed persistent tachycardia and debilitating neurological symptoms. (*Id.*). She asserts that she continues to experience these symptoms and remains under medical monitoring. (*Id.* at p. 11).

O'Neill claims that Defendants' actions constituted nonconsensual harmful and offensive physical contact, including physical restraint and involuntary intramuscular injection. (*Id.*). She also claims she was intentionally confined and restrained against her

will without lawful justification or statutory authority, and that Defendants' conduct was willful, reckless, and constituted extreme and outrageous conduct beyond the bounds of decency. (*Id.*). As a result of this conduct, O'Neill asserts that she suffered physical injury requiring ongoing medical care, sustained impairment of earning capacity and daily functioning, and experienced severe emotional distress. (*Id.*). As noted above, she seeks at least $250,000 in compensatory damages, as well as punitive damages and costs.

## Jurisdiction

A federal district court has original subject matter jurisdiction over all civil actions where the matter is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). "Citizenship is the operative consideration for jurisdictional purposes." *Martin v. AmeriGas Propane, L.P.*, No. 1:24-CV-01098-TWP-TAB, 2024 WL 4953506, at *1 (S.D. Ind. July 10, 2024) (citing *Meyerson v. Harrah's East Chicago Casino*, 299 F.3d 616, 617 (7th Cir. 2002) ("[R]esidence and citizenship are not synonyms and it is the latter that matters for purposes of the diversity jurisdiction."). In the Seventh Circuit, jurisdictional allegations must be made on personal knowledge; asserting the citizenship of a party based on "information and belief" is generally insufficient to establish diversity jurisdiction. *Am.'s Best Inns, Inc. v. Best Inns of Abilene*, L.P., 980 F.2d 1072, 1074 (7th Cir. 1992) (a jurisdictional allegation made "to the best of my knowledge and belief" is insufficient).

Here, O'Neill has properly alleged that she is a citizen of Maryland, Southern Illinois Hospital Services is a citizen of Illinois, and the amount in controversy well exceeds $75,000. However, her allegations as to the citizenship of Defendants Dr. Alan

Wilson and Amber Durham[2] are based on information and belief and, therefore, are insufficient to establish subject matter jurisdiction. O'Neill will be granted leave to file a Second Amended Complaint that addresses this pleading deficiency.

## Legal Claims

As to the legal claims in the First Amended Complaint, the Court finds that O'Neill has alleged sufficient facts to state a claim for relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (a complaint must allege enough facts to state a claim to relief that is "plausible" on its face). Although O'Neill has not delineated specific counts or claims, the law does not require a plaintiff, particularly one proceeding *pro se*, to plead any specific legal theories. *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005). Instead, a court "should ask whether any set of facts consistent with the complaint would give him a right to recover, no matter what the legal theory." *Id.*

Based on the facts asserted by O'Neill, the Court finds that her claims likely sound in the Illinois torts of medical battery, intentional infliction of emotional distress, and false imprisonment. When preparing her Second Amended Complaint, O'Neill is directed to indicate whether she intends to proceed on these theories (and/or other legal theories) and which claims apply to each individual Defendant. O'Neill is encouraged to review this Court's *Pro Se* Litigant Guide as well as the American Bar Association's *Pro Se* Handbook, both of which are available at: https://www.ilsd.uscourts.gov/representing-

---

[2] The Court disregards the citizenship of the John and Jane Doe Defendants for purposes of determining diversity jurisdiction. *See Pain Ctr. of SE Indiana LLC v. Origin Healthcare Sols. LLC*, 893 F.3d 454, 459 (7th Cir. 2018) (noting that when John Does are added as nominal parties or placeholders in the event the plaintiff identifies additional defendants during discovery, the citizenship of those defendants can be disregarded for diversity jurisdiction).

yourself-pro-se-litigant. O'Neill is **ORDERED** to file the Second Amended Complaint on or before **April 27, 2026**.

O'Neill is again remined that she is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in her address; the Court will not independently investigate her whereabouts. This shall be done in writing and not later than **14 days** after a change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   March 26, 2026**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**